In the United States District Court
for the Southern District of Georgia
Brunswick Division

FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.

2018 SEP 24 PM 2: 27

CLERK _____
SO. DIST. OF GA.

KRISTI MOBLEY,

     Plaintiff,

     v.

SHOE SHOW, INC.,

     Defendant.

CV 2:17-024

## ORDER

Plaintiff filed this action seeking damages pursuant to the Fair Labor Standards Act ("FLSA") and Georgia law. Dkt. No. 1 at 1. Before the Court is Defendant Shoe Show, Inc.'s ("Shoe Show") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Dkt. No. 17. This Motion has been fully briefed and is ripe for review. For the reasons stated below, the Motion is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

From October 10, 2010 to September 11, 2016, Plaintiff worked as a store manager at Shoe Show. Dkt. No. 20-2 at 3, 6. Shoe Show is a business that sells footwear and related accessories. Dkt. No. 18 ¶ 1. As the store manager, Plaintiff was the highest ranking employee at the store, except when her

district manager or regional manager visited.  Dkt. No. 20-2 at 8, 9, 14.  Below Plaintiff in rank were two employees, whom the parties refer to as "key holders," who were full-time, hourly employees.  Id. at 14, 15.  In addition, at any given time an average of three to four part-time, hourly employees worked at the store.  Id. at 15.

For her work at Shoe Show, Plaintiff was originally paid a salary of $660 per week; her salary was increased to $700 in 2012.  Id. at 3, 4, 10, 11.  The salary was all that Plaintiff was paid, and it compensated her for all hours worked.  In other words, it neither changed based on the amount of hours Plaintiff worked in a week, id. at 10, 11, nor did it vary on Plaintiff's performance.  Id. at 10.

Plaintiff's immediate supervisor, Karen Kolves, was a district manager for Shoe Show, dkt. no. 20-2 at 8, and in many respects oversaw the operations of Plaintiff's store.  Kolves inspected Plaintiff's store around once a month.  Id. at 9. Kolves received copies of the schedules Plaintiff made each month.  Id. at 20.  Kolves budgeted the amount of hours per week that Plaintiff could schedule other employees.  Dkt. No. 18 ¶ 23.[1]  In addition, Kolves partnered with Plaintiff to approve

---

[1]  Defendant stated during its Rule 30(b)(6) deposition that Plaintiff had the authority to schedule other employees for as many hours as she wished, even if that would trigger corporate action against her.  Dkt. No. 23-4 at 5.  Nevertheless,

time off, dkt. no. 20-2 at 24, hired all key holders, id. at 26, set the pay rates for new hires, id. at 28, fired employees, id. at 29; dkt. no. 23-2 ¶ 4.F, denied Plaintiff's request to use a window cleaning service, dkt. no. 23-2 ¶ 5,[2] instructed Plaintiff to hold meetings with the employees to preempt any personnel issues, dkt. no. 20-2 at 37, 38, and required Plaintiff to cover shifts of unavailable employees.  Id. at 5, 48; Dkt. No. 23-2 ¶ 5.    Defendant contends that Plaintiff had the power to terminate employees but did not specify whether Plaintiff needed the district manager's approval.  Dkt. No. 23-4 at 4.  Plaintiff contends that employees could only be fired with the district manager's approval.  Dkt. No. 23-2 ¶ 4.F.  As a store manager, Plaintiff wrote up only one employee, and Kolves handled the matter.  Dkt. No. 20-2 at 30, 31.  During Plaintiff's tenure, the store was closed one time, and Kolves made that decision. Id. at 39.  Finally, only Kolves could authorize overtime, and she only did so when she was forced to, i.e., when no other employees were available to staff the store.  Dkt. No. 23-2 ¶ 5.

---

Defendant recognized in its Statement of Undisputed Material Facts that Plaintiff was budgeted *up to* 100 hours per week for scheduling other employees.  Dkt. No. 18 ¶ 23.  The store was open 72 hours a week, but more during peak times, such as holidays.  Dkt. No. 23-4 at 13; Dkt. No. 23-2 ¶ 3.
[2]  Defendant asserts that Plaintiff had the power to hire a window cleaning service.  Dkt. No. 23-4 at 6.

In addition to the control that Kolves had over the store operations, Shoe Show retained control over various other aspects of the store's operations. Shoe Show retained control over the store's budget, dkt. no. 20-2 at 34, over inventory levels, id.; dkt. no. 23-4 at 4, over what inventory was ordered, dkt. no. 23-4 at 4, over customer discounts, dkt. no. 20-2 at 36, and over the power to contract with outside vendors, dkt. no. 23-2 ¶ 5.[3]

Finally, Shoe Show controlled many of the store's operations by means of corporate policies and procedures set forth in a manual. Plaintiff was required to ensure that she and other employees abided by the corporate manual. Dkt. No. 20-2 at 20. As a new store manager, Plaintiff was tested on corporate policies covering a wide range of subjects, such as: personnel policies; cash register; weekly sales and payroll; returned checks; freight; loss prevention; closing; sales floor etiquette; merchandise presentation; buyer/distribution; price adjustments; inventor; damaged returns; maintenance/ housekeeping; dyeables; and emergencies. Id. at 56. The manual

---

[3] Defendant urges the Court to disregard Plaintiff's contentions set forth in her affidavit, dkt. no. 23-2, that was filed in response to Defendant's Motion for Summary Judgment. Defendant argues that the affidavit is a "mere sham to avoid summary judgment because the vast majority of Plaintiff's affidavit contradicts Plaintiff's prior sworn testimony." Dkt. No. 25 at 2. The affidavit is not a sham.

contained a policy on "rest and meal periods." Id. at 51. Corporate policy set the length of employees' lunch breaks. Id. at 12. The first part of new hire training was to learn and be tested on the manual. Id. at 25. When asked whether she tested employees on their product knowledge, Plaintiff replied: "Not really because that was part of the testing in the [training] book." Id. at 25, 26.

As store manager, Plaintiff had numerous managerial duties. Plaintiff admits to having played a role in training new hires, dkt. no. 20-2 at 25,[4] interviewing and hiring part-time employees, id. at 26, 27; dkt. no. 23-2 ¶ 4.A,[5] choosing who to interview and conducting initial interviews for full-time employees, dkt. no. 20-2 at 26,[6] scheduling employees within the hours budgeted by the district manager, id. at 16, 22, ensuring that the policy manual was up to date and in good physical condition, id. at 17, ensuring that employees abided by Shoe Show's policies and procedures as set forth in the manual, id. at 20, ensuring that the actual time employees worked was not

---

[4] While Plaintiff did play a role in training new hires, new hire training primarily consisted of studying a training manual, taking accompanying tests, and then shadowing other employees. Dkt. No. 20-2 at 25.

[5] Plaintiff hired between six and eight during her tenure. Dkt. No. 20-2 at 27.

[6] Only one key holder was hired during Plaintiff's time at Shoe Show. Dkt. No. 20-2 at 15, 28. During Plaintiff's last two weeks, a part-time employee was promoted to key holder. Id. at 28, 29. Also, Kolves did not hire a key holder if Plaintiff did not want that person hired. Id. at 27.

greater than the time Plaintiff scheduled them, id. at 20, 21, consulting with employees about possible issues, id. at 38, disciplining (but not terminating) employees, id. at 32; dkt. no. 23-2 ¶ 4.F, counseling employees, dkt. no. 20-2 at 32, approving break requests, id. at 24, assigning employees duties within the store, id. at 32, ensuring cash was safely deposited, id. at 18, reducing shrinkage (stolen or unaccounted for inventory), id. at 34, 35, ensuring the safety of employees, id. at 39, 40, and coordinating completion of new hire paperwork, id. at 28.

The extent of these managerial duties was limited by the small amount of turnover at the store. For example, training took little of Plaintiff's time because of the infrequency of new hires. Dkt. No. 23-2 ¶ 4.A, 4.B. Because turnover was small, employees were very familiar with their job duties. Id. ¶ 4.B. Likewise, Plaintiff spent little time assigning job duties. Id. ¶ 4.E.

Plaintiff, however, spent around 95% of her time on work that the hourly employees were tasked with. Dkt. No. 23-2 ¶ 3. Because of time constraints, Plaintiff was forced to schedule an extra employee on truck days and to help unload the truck. Id. at 22, 23. Plaintiff also would run the register, clean the store, and shift shoes to make room on the shelves. Id. at 5, 32, 33.

6

Before classifying Plaintiff as exempt from the overtime requirements of the FLSA, Defendant undertook an initial analysis to determine whether Plaintiff would "perform the necessary duties to be classified as exempt . . . [and] ensure that the [employee would] be expected to supervise at least 80 hours of subordinate work." Dkt. No. 20-3 ¶ 3.[7] Defendant undertook further analyses at unspecified intervals to ensure that Plaintiff's exemption classification continued to be proper. Id. ¶¶ 4, 5; Dkt. No. 23-4 at 12, 13. Defendant has submitted proof that verifies the number of hours Plaintiff supervised each week from 2014 to Plaintiff's resignation in 2016. Dkt. No. 20-3 at 5-7. Plaintiff fell below the 80-hour threshold only four weeks during that span. Id. After conducting the same analyses for other store managers, Defendant classified some of them as nonexempt. Dkt. No. 23-4 at 12, 13. Nevertheless, Defendant did not keep any sort of diary or log of Plaintiff's daily activities or time spent on specific tasks. Dkt. No. 23-4 at 4.

---

[7] The purpose of the 80-hour inquiry was to determine whether a particular employee satisfied the third requirement of the executive exemption, i.e., whether an employee customarily and regularly directed the work of two or more other employees. Dkt. No. 23-4 at 12, 13. Defendant described the 80-hour threshold as a "major" distinction that it used in its classification analyses. Id.

In its First Interrogatories to Plaintiff, Defendant asked Plaintiff to "[s]tate the precise amount of damages [she] claim[ed] to have suffered as a result of any alleged unlawful conduct by Defendant, and describe in detail the factual basis and method of computation used to determine the amount of such damages." Dkt. No. 20-7 at 7.   In her response, Plaintiff failed to list any damages for her breach of contract claim. Dkt. No. 20-8 at 6.   Also, Plaintiff swore that she was only seeking unpaid overtime, dkt. no. 20-2 at 47, and that the two parties were "just talking about an FLSA" claim in this case. Dkt. No. 20-2 at 48.

Mobley brought an action to recover overtime compensation and other damages, which she claims are owed to her under the FLSA and Georgia law.   Dkt. No. 1 at 1.   For the FLSA claim, she seeks a regular hourly rate for overtime, an overtime premium of one-half of the hourly rate for each hour worked in excess of forty hours per week, liquidated damages equal to the total amount of unpaid wages and overtime, and the imposition of a three-year statute of limitations.   Id. ¶¶ 7, 9.   Mobley also brought a claim for breach of contract.

## LEGAL STANDARD

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R.

Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." _FindWhat Inv'r Grp. v. FindWhat.com_, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." _Id._ In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. _Johnson v. Booker T. Washington Broad. Serv., Inc._, 234 F.3d 501, 507 (11th Cir. 2000).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. _Celotex Corp. v. Catrett_, 477 U.S. 317, 323 (1986). The movant must show the court that there is an absence of evidence to support the nonmoving party's case. _Id._ at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. _Anderson_, 477 U.S. at 257.

The nonmovant may satisfy this burden in two ways. First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party,

who has thus failed to meet the initial burden of showing an absence of evidence." <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting <u>Celotex Corp.</u>, 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." <u>Id.</u> at 1117. Where the nonmovant attempts to carry this burden instead with nothing more "than a repetition of his conclusional allegations, summary judgment for the [movant is] not only proper but required." <u>Morris v. Ross</u>, 663 F.2d 1032, 1033–34 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

**DISCUSSION**

**I. Plaintiff's FLSA Claims**

As a general rule, the FLSA requires employers to pay employees time and a half for hours worked in excess of a 40-hour workweek. 29 U.S.C. § 207(a)(1); <u>Dade County, Fla. v. Alvarez</u>, 124 F.3d 1380, 1384 (11th Cir. 1997). But it also provides a number of exemptions for this overtime compensation requirement. <u>See</u> 29 U.S.C. § 213. Defendant contends that Plaintiff satisfies the requirements for two of these exemptions: the executive exemption and the administrative exemption. 29 U.S.C. § 213(a)(1). As the employer, Defendant

10

has the burden of proving that an exemption applies. <u>Watkins v. City of Montgomery, Ala.</u>, 775 F.3d 1280, 1283 (11th Cir. 2014).

The Supreme Court has admonished courts in the past for not construing exemptions narrowly enough. <u>Nicholson v. World Business Network, Inc.</u>, 105 F.3d 1361, 1364 (11th Cir. 1997) (citing <u>A.H. Phillips, Inc. v. Walling</u>, 324 U.S. 490 (1945)). An exemption, then, must "be applied only to those [employees] clearly and unmistakably within the terms and spirit of the exemption." <u>Morgan v. Family Dollar Stores</u>, 551 F.3d 1233, 1269 (11th Cir. 2008) (quoting <u>Brock v. Norman's Country Market, Inc.</u>, 835 F.2d 823, 826 (11th Cir. 1988)). <u>See also Birdwell v. City of Gadsden</u>, 970 F.2d 802, 805 (11th Cir. 1992) (exemptions must be proven by "clear and affirmative evidence").

## A. The Executive Exemption

The first claimed exemption applies to individuals "employed in a bona fide executive . . . capacity." 29 U.S.C. § 213(a)(1). Under regulations interpreting this statutory exemption, bona fide executive employees must satisfy four requirements. Defendant must establish that:

> (1) [Plaintiff was] [c]ompensated on a salary basis at a rate of not less than $455 per week ..., exclusive of board, lodging or other facilities;

> (2) [Plaintiff's] primary duty [was] management of the enterprise in which the employee [was] employed or of a customarily recognized department or subdivision thereof;

11

> (3) [Plaintiff] customarily and regularly direct[ed] the work of two or more other employees; and
>
> (4) [Plaintiff had] the authority to hire or fire other employees or [that the Plaintiff's] suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees [were] given particular weight.

29 C.F.R. § 541.100(a).[8]

The record undisputedly shows that Plaintiff was compensated over $455 per week. Furthermore, it shows that Plaintiff had the authority to hire other employees, and that Plaintiff's recommendations for key-holder applicants were given particular weight. Thus, only the second and third requirements are at issue, i.e., the "primary duty" requirement and the direction of work requirement.

## 1. Customarily and Regularly Directs the Work of Two or More Other Employees

Defendant has the burden of proving that Plaintiff customarily and regularly directed the work of two or more other employees. 29 C.F.R. § 541.100(a)(1). The regulations define

---

[8] On May 23, 2016, the Department of Labor instituted a New Rule revising 29 C.F.R. Part 541. The New Rule doubles the minimum salary level for employees under the executive exemption. The New Rule would have taken effect on December 1, 2016, but its effectuation was enjoined nationwide by the United States District Court for the Eastern District of Texas. See Nevada v. United States Dep't of Labor, No. 4:16-CV-731, 2017 WL 3837230, at *1 (E.D. Tex. Aug. 31, 2017), appeal docketed, No. 17-41130 (5th Cir. Nov. 2, 2017). Nevertheless, Plaintiff voluntarily resigned her position on September 11, 2016. Thus, the New Rule, regardless of the injunction, does not apply to this case.

"customarily and regularly" as "a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701. The "two or more employees" component is satisfied if Plaintiff supervised "two full-time employees or their equivalent." 29 C.F.R. § 541.104(a). Supervision only requires that Plaintiff "ensur[es] that company policies are carried out. One need not be present for this to occur." Sturm v. TOC Retail, 864 F. Supp. 1346, 1354-55 (M.D. Ga. 1994).

Defendant has provided ample evidence that satisfies these standards as a matter of law. First, prior to classifying an employee as exempt, Defendant ensures that the employee will be expected to supervise at least 80 hours of work. Second, Defendant continually ensures, albeit at unspecified intervals, that exempt employees continue to satisfy this supervision requirement. Last, Defendant has provided records from 2014 until Plaintiff's resignation in 2016 that show the amount of hours Plaintiff supervised each week. These records prove that Plaintiff easily satisfied this requirement for those years.

In its Response to Defendant's Statement of Material Facts, Plaintiff has denied Defendant's evidence. Plaintiff's principal argument is that because Plaintiff was not in the store while subordinate employees were working, then Plaintiff could not count those hours toward supervision. But this

13

argument ignores case law that holds that employees need not be present to accumulate supervised hours. Sturm, 864 F. Supp. at 1354-55. Rather, what is operative is whether Plaintiff was responsible for ensuring that company policies were carried out. Id. Plaintiff's own testimony shows that she was.

Plaintiff has presented no evidence creating a genuine dispute of material fact regarding this issue.

## 2. **Primary Duty**

Next, Defendant has the burden of proving that Plaintiff's primary duty was the "performance of exempt work." 29 C.F.R. § 541.700(a). An employee's "primary duty" is defined as "the principal, main, major or most important duty that the employee performs." Id. This determination "must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." Id. The Eleventh Circuit has recognized "the necessarily fact-intensive nature of the primary duty inquiry, that the answer is in the details, and that where an issue turns on the particular facts and circumstances of a case, it is not unusual for there to be evidence on both sides of the question, with the result hanging in the balance." Morgan, 551 F.3d at 1269 (internal quotes and citations omitted). See also Rodriquez v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1264 (11th Cir. 2008) ("When it comes to

14

deciding whether an employee is an executive within the meaning of the FLSA, the answer is in the details."); Rutenberg v. Boynton Carolina Ale House, LLC, No. 09-80409-CIV, 2010 WL 135100, at *3 (S.D. Fla. Jan. 8, 2010) ("[M]erely having the title 'manager' is not talismanic, and the Court must still engage in a fact-specific inquiry to determine whether Plaintiff's most critical duties to the enterprise were his exempt managerial duties.").

Factors to be considered when determining an employee's primary duty include, but are not limited to: (1) "the amount of time spent performing exempt work;" (2) "the relative importance of the exempt duties as compared with other types of duties;" (3) "the employee's relative freedom from direct supervision;" and (4) "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." 29 C.F.R. § 541.700(a).

### i. Plaintiff's time spent performing exempt work

Defendant does not dispute Plaintiff's contention that she spent more than 95% of her time performing nonexempt work.[9] Defendant does dispute, however, that Plaintiff was *required* to perform nonexempt work. Defendant reasons that Plaintiff assigned nonexempt work to herself and that she had the

---

[9] As addressed, Defendant does dispute whether the Court should admit facts in Plaintiff's affidavit.

discretion not to. Plaintiff disagrees and argues that because her district manager both rarely permitted hourly employees to work overtime and budgeted the amount of hours per week Plaintiff could schedule other employees, Plaintiff had no choice but to perform nonexempt work and to work very long hours.

From the record, it is reasonable for a fact finder to conclude that Plaintiff was forced by her budgetary and overtime constraints to assign nonexempt work to herself. First, Defendant agrees that Plaintiff was budgeted up to 100 hours a week to schedule her employees, and does not disagree that the store during slow times was open 72 hours a week but more during peak times, such as holidays. Second, Plaintiff was forced to schedule extra help on truck days. Last, when employees, were sick, fired, quit, or took vacation, Plaintiff was required by Kolves to work the unfilled shifts. In contrast to Plaintiff's testimony, Defendant has given no evidence to dispute Plaintiff's 95% claim, except for its blanket assertion that Plaintiff chose to, but did not have to, assign nonexempt duties to herself.

Defendant has not provided evidence disputing Plaintiff's contention that she spent around 95% of her time on nonexempt work. Defendant recognized that it does not keep any sort of diary or log of tasks Plaintiff completed each day. Defendant

16

performed continuing analyses at unspecified intervals to determine whether to classify Plaintiff and other Shoe Show managers as exempt under the executive exemption. A "major" determination in these analyses was the amount of hours per week a particular employee supervised other employees.[10]   While Defendant referenced these analyses multiple times, it never addressed whether these analyses inquired into the amount of time Plaintiff spent on nonexempt duties. Thus, while Defendant stated that it performed continual analyses ensuring that Plaintiff would "perform the necessary duties to be classified as exempt," dkt. no. 20-3 ¶ 3, it never offered additional details, other than the number of hours per week supervised, of what those analyses entailed.

Viewing the evidence in the light most favorable to Plaintiff, the Court must accept that Plaintiff spent around 95% of her time on nonexempt work. Ninety-five percent is "a far cry from the DOL's 50% guideline for management tasks." Morgan, 551 F.3d at 1269 (citing 29 C.F.R. § 541.700(b)). This factor is not dispositive of the primary duty issue, but it does fall heavily in Plaintiff's favor.

---

[10] The purpose of this determination was to satisfy the third requirement of the executive exemption, i.e., whether an employee customarily and regularly directed the work of two or more other employees. See 29 C.F.R. § 541.100(a).

## ii. **The relative importance of the exempt duties compared with nonexempt duties**

Turning to the second factor, the Code of Federal Regulations define "management" as including, but not limited to activities such as

     i.   interviewing, selecting, and training of employees;

    ii.   setting and adjusting their rates of pay and hours of work;

  iii.   directing the work of employees;

   iv.   maintaining production or sales records for use in supervision or control;

    v.   appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status;

   vi.   handling employee complaints and grievances;

  vii.   disciplining employees;

 viii.   planning the work;

   ix.   determining the techniques to be used;

    x.   apportioning the work among the employees;

   xi.   determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold;

  xii.   controlling the flow and distribution of materials or merchandise and supplies;

xiii.   <u>providing for the safety and security of the employees
or the property;</u>

xiv.   planning and controlling the budget; and

xv.   monitoring or implementing legal compliance measures.

See 29 C.F.R. § 541.102 (emphasis added).

Plaintiff's admissions show that Plaintiff engaged, at
least to some extent, in the "management" activities underlined
above.   Specifically, Plaintiff played a role in: training new
hires; interviewing and hiring part-time employees; choosing who
to interview and conducting initial interviews for full-time
employees; scheduling employees within the hours budgeted by the
district manager; ensuring that the policy manual was up to date
and in good physical condition; ensuring that the actual time
employees worked was not greater than the time Plaintiff
scheduled them for that week; consulting with employees about
possible issues; disciplining (but not terminating) employees;
approving break requests by employees; assigning employees their
duties within the store; ensuring cash was safely deposited;
reducing shrinkage (stolen or unaccounted for inventory);
ensuring the safety of employees; and coordinating completion of
new hire paperwork.

However, the record discounts the extent of these
managerial activities.   For instance, Plaintiff testified that
training took little of her time because of the infrequency of

new hires.   It is reasonable to infer that training took little managerial discretion because training primarily consisted of studying a training manual, taking accompanying tests, and then shadowing other employees.   Plaintiff testified that she did not "really" test other employees on their product knowledge "because that was part of the testing in the book."   Dkt. No. 20-2 at 25, 26.   Plaintiff further testified that the small amount of turnover meant that employees were very familiar with the requirements of their jobs; thus, Plaintiff did not spend much time or discretion assigning employees daily tasks or scheduling employees.   Plaintiff's assertion that there was not much turnover is reasonable considering that she hired between six and eight part-time employees over the six years, four weeks, and two days working at Shoe Show.   Only one full-time (or key holder) employee was hired during Plaintiff's tenure at Shoe Show.   The Court, then, finds it reasonable to infer that coordinating new hire paperwork consumed little of Plaintiff's time spent working.   Some of the other duties, by their very nature, do not consume much time or discretion, such as keeping the policy manual up to date and in good condition and approving break requests.

Defendant largely relies on the Department of Labor's concurrent duties regulation to argue that Plaintiff's primary duty was management.   See 29 C.F.R. § 541.106.   The concurrent

20

duties regulation addresses the situation that is present here,
i.e., when an employee concurrently performs both exempt and
nonexempt work.    While the regulation recognizes that exempt
employees generally "remain responsible for the success or
failure of business operations under their management while
performing the nonexempt work," the regulation also recognizes
that "[g]enerally, exempt executives make the decision regarding
when to perform nonexempt duties."    29 C.F.R. § 541.106(a).
The regulation also recognizes the fact-intensive nature of the
primary duty inquiry: "Whether an employee meets the
requirements of § 541.100 when the employee performs concurrent
duties is determined on a case-by-case basis and based on the
factors set forth in § 541.700."    Id.    Thus, Plaintiff being
responsible for her management duties at all times is not
dispositive of the primary duty requirement.    See Scheffer v.
Int'l Paper Co., No. 1:11-CV-00406-AT, 2012 WL 13047315, at *10
(N.D. Ga. Sept. 7, 2012) (finding that the defendant had "not
presented sufficient evidence to demonstrate as a matter of law
that Plaintiff was performing his managerial and non-managerial
functions concurrently solely because he was responsible for
running the store at the same time he was spending significant
time performing manual tasks").

Similarly, Plaintiff's statement that she was responsible for the overall store operations is not dispositive of the primary duty inquiry. The record evidences several areas in which Plaintiff had no authority over store operations and thus could not be responsible for those aspects of the store's operation. Most notably, Plaintiff had no control over the budget, other employees pay rates, inventory levels, what inventory was ordered, terminating other employees, and the amount of total hours employees could be scheduled per week. Plaintiff did not even have discretion over the length of her lunch break. There are several other limits on Plaintiff's ability to control the store's operations that are discussed in the next subsection. Based on this record, a reasonably jury *could find* that Plaintiff's management duties were of less relative importance compared with her nonexempt duties.

Furthermore, as discussed above, factual disputes exist over the degree to which Plaintiff could decide when to perform nonexempt duties. Defendant states that Plaintiff chose to assign any nonexempt duties to herself. Plaintiff shows that the limited budget for scheduling hourly employees required her to perform nonexempt duties. In addition, Plaintiff argues that because her district manager would rarely approve overtime for other employees she was forced to cover shifts that were

unfilled due to other employees being sick, taking vacation, quitting, or being fired.

Given the overwhelming percentage of time Plaintiff spent performing nonexempt work in conjunction with the disputed testimony regarding the relative importance of Plaintiff's managerial duties, the Court cannot, based on this record, make a definitive determination as to whether Plaintiff's managerial duties were of greater relative importance than Plaintiff's nonexempt duties. Thus, this factor falls in favor of neither Plaintiff nor Defendant.

### iii. **Plaintiff's relative freedom from direct supervision**

Like the second factor, this factor is inconclusive. Plaintiff did have ample freedom in some respects. As previously set forth, Plaintiff had unilateral authority to interview and hire part-time employees, pull resumes and hold an initial interview for key-holder applicants, schedule employees, assign employees duties in the store, write up and counsel employees, and reduce shrinkage. Plaintiff's supervisor never hired a key holder that Plaintiff did not want. And, Plaintiff was the highest ranking management employee on site at the store, except when the district manager visited (around once a month) or the regional manager visited (around twice a year).

Plaintiff, however, brings forth evidence that in many ways shows she was micromanaged. As mentioned, Plaintiff had no control over the budget, other employees' pay rates, inventory levels, what inventory was ordered, whether to terminate employees, whether to approve overtime, and the total number of hours per week she could schedule other employees. Plaintiff had no power to give customers discounts, and no power to contract with outside vendors.[11] Plaintiff was responsible for disciplining employees, but this responsibility was at least partially shared with Plaintiff's supervisor. Plaintiff was required to cover shifts if a key holder went on vacation, and Plaintiff did not have unilateral authority to approve time off.

Most importantly, Plaintiff was required to ensure that she and other employees abided by the corporate manual. The record is unclear over the degree to which the corporate manual limited Plaintiff's managerial discretion. Evidence in the record, however, makes it reasonable to infer that the manual played more of a micromanagement role than not. Plaintiff stated at one point that the manual dictated the length of her lunch break. The manual contained a policy on "rest and meal periods." Dkt. No. 20-2 at 51. The first part of new hire training was to learn and be tested on the manual. One of

---

[11] Defendant maintains that Plaintiff had the power to hire one type of outside vendor, a window cleaning service.

Plaintiff's duties was to ensure that employees complied with the procedures in the manual.   When asked whether she tested employees on their product knowledge, Plaintiff replied: "Not really because that was part of the testing in the [training] book."   Id. at 25, 26.   Lastly, as a new manager trainee, Plaintiff was tested on, and thus trained on, corporate policies covering a wide range of subjects, such as: personnel policies; cash register; weekly sales and payroll; returned checks; freight; loss prevention; closing; sales floor etiquette; merchandise presentation; buyer/distribution; price adjustments; inventor; damaged returns; maintenance/housekeeping; dyeables; and emergencies.   The minutiae Plaintiff was tested on, along with the other evidence just listed, make it reasonable to infer that corporate policies and procedures played more of a micromanagement role than not.

The record shows that Plaintiff did have some significant managerial responsibilities.   In contrast, the record shows that Plaintiff's discretion over store operations was significantly curtailed by corporate policies and procedures and by her supervisors.   Thus, whether this factor weighs in favor of Plaintiff or Defendant cannot be determined from this record, and is more appropriately left to a jury.

iv. **Relationship between Plaintiff's salary and the wages paid to other employees**

The record does not contain any evidence of what employees other than Plaintiff were paid. Thus, this factor is also inconclusive.

v. **Summary**

After an exhaustive review of the record and a careful weighing of the factors identified by 29 C.F.R. § 541.700, the Court finds that there are genuine issues of material fact as to whether Plaintiff's primary duty was management. Even though Plaintiff's management duties may have been indispensable to the operation of the store, ample evidence in the record shows that Plaintiff's nonexempt work may have been equally, if not more, important to the operation of the store. See Morgan, 551 F.3d 1233, 1270 (upholding jury verdict for plaintiffs in part because a large amount of nonexempt work "by store managers was a key to [Defendant's] business model given each store's limited payroll budget and the large amount of manual labor that had to be performed"). Thus, at this stage of the case, Defendant has not met its burden of proving "by clear and affirmative evidence," Birdwell, 970 F.2d at 80, that Plaintiff falls "clearly and unmistakably within the terms and spirit of the exemption." Id. at 1269. Accordingly, Defendant's Motion for Summary Judgment is denied on this issue.

## B. **Administrative Exemption**

For the FLSA's administrative exemption to apply, Defendant must establish that:

> (1) [Plaintiff was] [c]ompensated on a salary basis at a rate of not less than $455 per week ..., exclusive of board, lodging or other facilities;
>
> (2) [Plaintiff's] primary duty [was] the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) [Plaintiff's] primary duty include[d] the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).

Again, the first requirement is not in dispute: Plaintiff was compensated more than $455 per week. And again, Defendant has not shown that as a matter of law it can satisfy the second and third requirements.

For the second requirement, "an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a). This type of work includes work in the areas of quality control, safety and health, and personnel management. See 29 C.F.R. § 541.201(b). Plaintiff did have some responsibilities in all three of these areas, but Defendant cannot establish that

27

Plaintiff's *primary duty* was in these areas for the same reasons that Defendant could not establish that Plaintiff's primary duty was management.  See also <u>Scheffer</u>, 2012 WL at *11 (finding that "the primary duty inquiry under the second and third factors of the administrative exemption test is substantially similar to the primary duty inquiry under the executive exemption test").

The result and reasoning for the third requirement are the same as the second requirement and the primary duty requirement of the executive exemption.  Here, Defendant must prove that Plaintiff's primary duty "include[d] the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.202(a).  As discussed, Plaintiff did have numerous managerial duties on significant matters. What Defendant has not shown is that as a matter of law these duties were Plaintiff's primary duties.

For example, "[t]he exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources."  29 C.F.R. § 541.202(e). As explored above, the extent to which the manual controlled Plaintiff's discretion is unclear, but the record contains evidence from which a reasonable jury could conclude it was quite extensive, and thus that Defendant failed to meet its

28

burden of proof on this defense.   Accordingly, summary judgment on this issue is denied.

## C. Damages Calculated at a Half-Time Rate

Section 7(a)(1) of the FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the *regular rate at which he is employed*." 29 U.S.C. § 207(a)(1) (emphasis added). "If the employee is employed solely on a weekly salary basis, the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours *which the salary is intended to compensate*." 29 C.F.R. § 778.113 (emphasis added). Furthermore, "where the employee is paid solely on a weekly salary basis, the number of hours the employee's pay is intended to compensate—not necessarily the number of hours he actually works—is the divisor." Rodriguez, 518 F.3d at 1269. Thus, if a salary is intended to compensate an employee for all hours worked, then the employee has been paid his or her "regular rate." Accordingly, the employee in these circumstances is "only owed half-time for any hours worked in excess of forty per workweek." Torres v. Bacardi Glob. Brands Promotions, Inc., 482 F. Supp. 2d 1379, 1381 (S.D. Fla. 2007). See also Lamonica v. Safe Hurricane Shutters, Inc., 711

F.3d 1299, 1312 (11th Cir. 2013) ("[I]f the jury determined that Appellees' salaries were intended to compensate all hours worked, it should have determined that they were already partially compensated for their overtime hours at their regular rate of pay and merely awarded an overtime premium at half that rate."); Martin v. S. Premier Contractors, Inc., No. 2:11-CV-00197-RWS, 2013 WL 822635, at *9 (N.D. Ga. Mar. 6, 2013) (citing Transp. Co. v. Missel, 316 U.S. 572, 579 (1942)) (emphasis in original) ("Following the United States Supreme Court's decision in Missel, 316 U.S. at 580-81 & n. 16, courts have held that where an employee's salary is intended to compensate the employee for any and *all* hours worked in a given workweek, rather than some fixed number of hours, overtime compensation owed to the employee is calculated on a half-time rather than time-and-a-half basis.").

Here, Plaintiff's salary was intended to compensate her for all hours worked. Plaintiff testified that her salary never changed based on the amount of hours she worked, on the quality of her work, or on her performance. Even though Plaintiff's hours changed from week to week, she was always paid the same salary. Thus, Plaintiff's salary was intended to compensate her for all hours worked, and Plaintiff has not argued or shown any evidence to the contrary. Accordingly, Plaintiff, if successful, is only entitled to half-time for any hours worked

over forty per workweek.[12]   Defendant's Motion for Summary
Judgment is granted on this issue.

## D. Liquidated Damages

Next, Defendant has moved for summary judgment to determine
that Plaintiff is not entitled to liquidated damages.   Under the
FLSA, an employer which is liable for unpaid overtime
compensation is also liable for liquidated damages equal to the
unpaid overtime compensation.   29 U.S.C. § 216(b).   If, however,
"the employer shows to the satisfaction of the court that the
act or omission giving rise to [the violation] was in good faith
and that [it] had reasonable grounds for believing that [the]
act or omission was not a violation[,] ... the court may, in its
sound discretion, award no liquidated damages." 29 U.S.C. § 260.
The employer bears the burden of showing "that it acted with
both objective and subjective good faith." Meeks v. Pasco Cty.
Sheriff, 688 F. App'x 714, 717 (11th Cir. 2017) (quoting
Rodriguez, 518 F.3d at 1272).   For the subjective component,
Defendant must show that it had "an honest intention to
ascertain what the Act requires and to act in accordance with

---

[12] If Plaintiff is found by the trier of fact to be a nonexempt
employee, then her overtime must be "computed by (1) dividing
[her] weekly salary by the total number of hours worked in each
given week ([her] 'regular rate'), and then (2) after
determining [her] regular rate for a given week, [Plaintiff's]
overtime damages would be one-half [her] regular rate multiplied
by the number of overtime hours worked in that week." Torres v.
Bacardi Glob. Brands Promotions, Inc., 482 F. Supp. 2d 1379,
1381 (S.D. Fla. 2007).

it." Dybach v. State of Fla. Dep't of Corr., 942 F.2d 1562, 1566 (11th Cir. 1991) (internal quotes and citation omitted). And the objective component requires that Defendant have "reasonable grounds for believing that its conduct comported with the Act." Id. at 1567.

Regarding the subjective component, Defendant has shown that it has honestly attempted to act in accordance with the FLSA. First, whether or not Plaintiff is exempt under the Act is a genuine issue of material fact. The Court has found that Defendant has as a matter of law satisfied three of the four executive exemption requirements. The final requirement was too close to call, with evidence existing on both sides. Second, Defendant testified that before classifying an employee as exempt, it would ensure that the employee would "perform the necessary duties to be classified as exempt . . . [and] ensure that the [employee would] be expected to supervise at least 80 hours of subordinate work." Dkt. No. 20-3 ¶ 3. In addition, after classifying Plaintiff as exempt, Defendant completed "ongoing evaluation[s]" to determine whether she should remain classified as exempt. Id. Third, Defendant testified that after undergoing this analysis for other store managers, some have been deemed nonexempt. Considering these facts, the Court finds that Defendant has satisfied the subjective prong.

32

Defendant also satisfies the objective prong. As the Court took pains to emphasize in its primary duty analysis, Plaintiff was given numerous managerial duties. A fact issue, of course, remains regarding whether Plaintiff's managerial duties were more important to the store's operation as compared with her nonexempt duties. Nevertheless, the numerous managerial duties and powers that Plaintiff had are sufficient to satisfy the "reasonable grounds" requirement of the objective prong at issue here. In other words, whether Plaintiff was exempt is too close to determine as a matter of law, but all of the evidence in the record supporting the argument that Plaintiff was exempt is sufficient to show that Defendant had reasonable grounds to believe that its conduct comported with the FLSA. Thus, if Plaintiff is successful in this action, Defendant will not be liable for liquidated damages because of its good faith. Accordingly, Defendant's Motion for Summary Judgment is granted on this issue.

## E. Two-Year Statute of Limitation

The FLSA provides two different statutes of limitations depending on the severity of the violation. 29 U.S.C. § 255(a). If the violation was willful, then a three-year statute of limitation applies. Id. For all other violations, a two-year statute of limitations applies. Id. For the three-year statute of limitation to apply, Plaintiff must prove that Defendant

33

"either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133-35 (1988).  For the same reasons that Defendant is entitled to judgment as a matter of law on the liquidated damages issue, Defendant is also entitled to judgment as a matter of law on this issue.  Thus, the two-year statute of limitation applies to the case at bar, and Defendant's Motion for Summary Judgment is granted on this issue.

## II. **Plaintiff Abandoned Her Breach of Contract Claim**

Defendant has moved for summary judgment on Plaintiff's breach of contract claim.  Indeed, Plaintiff has abandoned her breach of contract claim.  First, Plaintiff has presented no evidence in support of this claim.  Second, Defendant asked Plaintiff in its First Interrogatories to "[s]tate the precise amount of damages [she] claim[ed] to have suffered as a result of any alleged unlawful conduct by Defendant, and describe in detail the factual basis and method of computation used to determine the amount of such damages."  Dkt. No. 20-7 at 7. Plaintiff's response failed to mention any damages related to a breach of contract claim, but it did address the FLSA claim. Finally, Plaintiff's deposition testimony confirms that she has abandoned any claims based on breach of contract.  Thus,

Defendant's Motion for Summary Judgment is granted regarding Plaintiff's breach of contract claim.

## CONCLUSION

For these reasons, Defendant's motion for summary judgment is **GRANTED** in part and **DENIED** in part.


**SO ORDERED**, this 24th day of September, 2018.


_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

35